RECEIVED

FEB 3 4 2020

DEBORAH S. HUNT, Clerk

# UNITED STATES COURT OF APPEALS
# FOR THE 6TH CIRCUIT
### 100 E. FIFTH STREET, ROOM 540
### POTTER STEWARD U.S. COURTHOUSE
### CINCINNATI, OHIO 45202-3988

Jane Doe,

       **Appellant**                   **Case No. 19-1566/19-1714**

**v.**

                               **Appeal from W.D. Mich.**
                               **1:18-cv-1231**

Ben Carson, et al.

       **Appellees\***

---

### Appeal from Denial of Anonymity and Dismissal of Case
### (\*Appellees have not objected to anonymity)

# Brief of Appellant, Jane Doe

Jane Doe
P.O. Box 230721
Grand Rapids, Michigan 49523
239.537.5966

**VI.  STATEMENT OF JURISDICTION**                      **1**

**VII.  STATEMENT OF ISSUES**                           **3**

**VIII.  STATEMENT OF THE CASE**                  **4**

    A.  The reason for the underlying litigation           4

    B.  Procedural history in the courts                   8

**IX.  SUMMARY OF THE ARGUMENT**                   **10**

**X.  ARGUMENT**                                   **11**

    A.  There is ample reason to grant anonymity to Doe under either abuse of discretion or de novo review.

        1.  Abuse of Discretion                          11

        2.  de Novo Review                               12

    B.  Congress amended the Americans with Disabilities Act after finding individuals were being denied in the courts the benefits Congress had intended by the original legislation.          15

    C.  Doe is not able to understand the suggestion by the district court that this appeal is frivolous when so many other courts grant anonymity for the reason of mental illness.              16

    D.  Doe has a first amendment right to the redress of grievances without roadblocks keeping her from doing so in the same way other first amendment rights are protected by the courts.          21

        1.  Freedom of Association                        21

        2.  Right to Privacy                              22

        3.  Freedom of Religion                           24

        4.  Freedom of Speech                             25

5.      Right to seek Redress in the Courts      27

6.      Due Process and Equal Protection      27

E.      Statutory law supports protecting private medical information, particularly related to mental illness, private.      29

F.      The Federal Rules of Civil Procedure do not preclude the use of pseudonyms.      37

G.      Using a pseudonym allows having an open trial and open court records without the need to seal any portions of the file.      38

H.      Significant errors were made by the district court in Doe's case that it puts into doubt that her submissions were read.      40

1.  Doe is not seeking to obtain government housing as stated by the district court.      40

2.  Doe did not fail to seek permission to file anonymously as suggested by the district court.      41

3.  The Magistrate stated that Doe repeatedly said her Free Speech Rights would be chilled when Doe did not say that.      46

4.  This district court bases evaluations of intimacy on a set of cases 45-60 years old, identified in one district court in Montana in 1974.      46

I.      Doe should be granted permission to amend her complaint without providing a copy in advance because it is very arduous and expensive for Doe and going through the effort only to have it rejected would be very difficult.      52

XI.    **CONCLUSION**      **55**

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*AFL-CIO v. FEC,* 333 F.3d 168, 175 (D.C.Cir. 2003) ................22

*Brown & Williamson Tobacco Corp. v. FTC,* 710 F.2d 1165 (6th Cir. 1983)...................................................................................29

*Buckley v. Valeo,* 424 U.S. 1, 64, 96 S. Ct. 612.........................22

*Citizens of a Strong Ohio v. Marsh*, 123 Fed.Appx. 630 (6th Cir. Jan. 3, 2005).............................................................................41-44

*Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001)...16

*Dept. of Justice v. Reporters Comm. for Free Press*, 489 U.S. 749 (1989)........................................................................................32

*Detroit Free Press, Inc. v. United States Dept. of Justice (Free Press II),* 829 F.3d 478 (6th Cir. 2016).......................................................32,34

*Doe v. Colautti* 592 F.2d 704 (3d Cir. 1979)................................17

*Doe v. Carson,* 2019 WL 1978428 (W.D. Mich., Jan. 4, 2019)....9,12,40,42,46

*Doe v. Carson,* 2019 WL 1978428 (W.D. Mich., May 3, 2019).....2,13

*Doe v. Deschamps,* 64 F.R.D. 652 (D. Mont. 1974)................46,50-51

*Doe v Frank,* 951 F.2d 320, 324 (11th Cir., 1992)......................17

*Doe v. Hartford Life and Accident Insurance Co.*, 237 F.R.D. 545, (D. N.J. July 14, 2006) ...............................................................19

*Doe v. Immigration and Naturalization Service, United States Dept. of Justice*, 867 F.2d 285, 291 n.1 (6th Cir. 1989)............................38

*Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011).....................17-18

*Doe v. New Hampshire Lottery Commission*, No. 226-2018-CV-00036, New Hampshire Superior Court, March 12, 2018 (won $560 million in lottery)................................................................................13

*Doe v. Pittsburgh,* 2017 WL 6508183 *2 (W.D. Mich. Sept. 6, 2017) 53

*Doe v. Pittsburgh,* 2018 WL 3029085 (W.D. Mich. Jan. 12, 2018)................................................................................42

*Doe v. Porter,* 370 F.3d 558 (6th Cir. 2004)..................13,14,24,38,50

*Doe v. Provident Life*, 176 F.R.D. 464 (E.D. Pa. 1997)................18

*Doe v. Sessions*, 2018 WL 4637014 (D.D.C. Sept. 27, 2018)........18-19

*Does 1-114 v. Shalushi,* 2010 WL 3037789 (E.D. Mich. July 30, 2010) 44

*Doe v. Stegall,* 653 F.2d 180 (5th Cir. 1981).................14,24,39,48,51

*Doe v. Whitmer*, 2019 WL 4645686 *1 (W.D. Mich., July 1, 2019) 43

*Does XXIII v. Advanced Textile Corp.,* 214 F.3d 1058 (9th Cir. 2000) 38,39

*Draper v. Washington*, 372 U.S. 487 (1963)................................28

*Food Marketing Institute v. Argus Leader Media,* 139 S. Ct. 2356 (2019)......................................................................30

*G.E.G. v. Shinseki,* 2012 WL 381589 (W.D. Mich. Feb. 5, 2012) 21,39,50-51

*Griffin v. Illinois*, 351 U.S. 12 (1956).........................................28

*Griswold v. Connecticut,* 381 U.S. 479 (1965) , 85 S. Ct. 1678, 14 L. Ed. 2d 510........................................................................22-23

*In re Anonymous Online Speakers*, 661 F.3d 1168, (9th Cir. 2011)..25

*In re: E.I. DuPont de Nemours and Company C-8 Personal Injury Litigation*, 2019 WL 3208711 at *1 (S.D. Ohio, July 16, 2019)....36

*In re Knoxville News-Sentinel Co.* 723 F.2d 470, 472-73 (6th Cir. 1983)..................................................................................30

*James v. Jameson*, 6 F.3d 239-40 (4th Cir. 1993).....................15,38

*Malibu Media v. Doe*, 2014 WL 772760 (S.D. Ind. Feb. 24, 2014)..45

*Marbury v. Madison*, 5 U.S. (Cranch 1) 174 (1803).....................27

*Mayer v. City of Chicago*, 404 U.S. 189 (1971), 92 S. Ct. 410, 30 L. Ed. 2d 372..............................................................................27-28

*Michigan Protection & Advocacy Service, Inc. v. Caruso*, 2006 WL 958496 (W.D. Mich. April 10, 2006).......................................17,36

*NAACP v. Alabama*, 357 U.S. 449, 461, 78 S. Ct. 1163, 2 L. Ed. 2d 1488 (1958)..............................................................................22

*NAACP v. Button*, 371 U.S. 415, 430-31 (1963)..........................23

*Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172, 124 S.Ct. 1570, 158 L.Ed.2d 319 (2004)..........................................34

*Nat'l Commodity & Barter Ass'n  v. Gibbs,* 886 F.2d 1240 (10th Cir. 1989)..................................................................................44

*Nixon v. Warner Communications*, 435 U.S. 589, 598, 98 S.Ct. 1306, 55 L.Ed. 2d 570 (1978)...........................................................29

*Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000)..................................................................................52

*Perry v. Schwarzenegger*, 591 F.3d 1147, 1159-60  (9th Cir. 2010).22

*Poe v. Ullman*, 367 U.S. 497 (1961).......................................23,50

*Richmond Newspapers v. Virginia,* 448 U.S. 555 (1980)...............39

*Signature Management Team, LLC v. Doe*, 876 F.3d 831, 835 (6th Cir. 2017).............................................................11,25,37,38,46

*Southern Methodist University Ass'n v. Wynne & Jaffe*, 599 F.2d 707 (5th Cir. 1979)...................................................................14,47

*Tennessee v. Lane*, 541 U.S. 509, 516, No. 02-1667 (2004)..........15

*U.S. v. Microsoft Corp.*, 56 F.3d 1448, 1457 (D.C. Cir. 1995)......2

*U.S. Dept. of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495, 114 S. Ct. 1006, 127 L.Ed.2d 325 (1994)...................................34

## Statutes

5 U.S.C. §551(1)(B)..................................................29

5 U.S.C. §552(b)......................................................29

5 U.S.C. §552(b)(3)..................................................34

5 U.S.C. 552(b)(4)...................................................31

5 U.S.C. § 552(b)(6).................................................34

5 U.S.C. §552(b)(7)(C) ..............................................32

5 U.S.C. §702........................................................1

5 U.S.C. §552a (1982 ed. and Supp. V)...............................33

28 U.S.C. §144 ......................................................55

28 U.S.C. §1291......................................................2

28 U.S.C. §1331......................................................1

28 U.S.C. §1343......................................................1

28 U.S.C. §1346............................................................1

28 U.S.C. §1361............................................................1

28 U.S.C. §2106............................................................2

29 U.S.C. §701 et seq....................................................10

29 U.S.C. §794a............................................................1

42 U.S.C. §1983............................................................1

42 U.S.C. §1988............................................................1

42 U.S.C. §2000e-5(f) through (k)....................................2

42 U.S.C. § 2000e-5(f)(3)...............................................1

42 U.S.C. §2000e-5(f)(4)................................................55

42 U.S.C. §2000e-5(f)(5)................................................55

42 U.S.C. § 2000e-5(j)....................................................1

42 U.S.C. §12101 et seq.................................................10

42 U.S.C. §12101 et seq.................................................15

42 U.S.C. §12101(a)(7)..................................................15

42 U.S.C. §12133...........................................................1

42 U.S.C. §12182(b)(2)(A)(ii).........................................8

42 U.S.C. §12201(f)........................................................8

## **Rules**

45 CFR §164.512(e)...............................................35

Fed.R.App.P. 4(a)(1)(B)............................................2

Fed.R.Civ.P. 10....................................................38

Fed.R.Civ.P. 17, advisory committee's note to 1966.....................37

Fed.R.Civ.P. 53....................................................55

## Other Authorities

Annals of Congress, the Bill of Rights.......................................27
(attachment 1)

*Black's Law Dictionary* 370 (rev. 4th ed. 1968)...........................31

EMS1 Staff, *$3M settlement reached in URMC HIPAA case involving stolen flash drive, laptop,* EMS1.com (Nov. 8, 2019) https://www.ems1.com/ems-products/secure-communications/articles/3m-settlement-reached-in-urmc-hipaa-case-involving-stolen-flash-drive-laptop...................................................................35

H.R.Rep. No. 93-1416, p. 7 (1974)..............................................33

Jayne S. Ressler, *#worstplaintiffever: Popular Public Shaming and Pseudonymous Plaintiffs*, 84 *Tennessee Law Review* 779, Summer (2017). (attachment 3)..........................................................40

Kimberly Daniels, Ph.D., and Joyce C. Abma Ph.D., *Current Contraceptive Status Among Women Aged 15-49: United States, 2015-2017*, *NCHS Data Brief*, No. 327, U.S. Dept. of Health & Human Servs., December 2018..............................................................50

Mary K. Cunningham, Martha M. Galvez, (and several others), *A Pilot Study of Landlord Acceptance of Housing Choice vouchers*, Urban Institute (August 20,

2018, executive summary, Sept. 20, 2018 full report),
https://www.urban.org/research/publication/pilot-study-landlord-acceptance-
housing-choice-vouchers..................................................................................5

Memorandum of January 21, 2009, Freedom of Information Act, Memorandum for
the Heads of Executive Departments and Agencies, 50 Fed. Reg. 74, 15 (The
President January 26, 2009)............................................................................29

*National Vital Statistics Reports*, Vol. 68, No. 13, Nov. 27, 2019...................51

*Oxford Universal Dictionary Illustrated* 367 (3d ed. 1961) .............................31


*Summary of the HIPAA Privacy Rule*, U.S. Dept. of Health and Human Services,
Office for Civil Rights, HIPAA Compliance Assistance  45 CFR §164.512(e)..35
(attachment 2)

Thomas Azar, *Banner Health in $6M settlement over data breach*, The National
Trial Lawyers Top 100 (Dec. 9, 2019),
https://www.thenationaltriallawyers.org/2019/12/banner-health-in-6m-settlement-
over-data-breach.............................................................................................35

*Webster's Seventh Collegiate Dictionary*, 174 (1963).......................................31

*Webster's Third New International Dictionary* 476 (1961)................................31

## VI.  STATEMENT OF JURISDICTION

A.  The district court has jurisdiction over Doe's disability discrimination case under 28 U.S.C. §1346 because the United States is a defendant; under 28 U.S.C. §1343 because it's a Civil Action for Deprivation of Rights; under 42 U.S.C. §1983 because under color of law defendants subjected Doe to statutory and Constitutional rights violations; under Proceedings in Vindication of Civil Rights per 42 U.S.C. §1988 such that the common law provide remedies for statutory or Constitutional discrimination to the extent not covered under other law; under 28 U.S.C. §1331 because a federal question is before the court; under 28 U.S.C. §1361 because Doe is requesting that the court order the Agency to do their job in supervising the State; under 5 U.S.C. §702 Right of review, a person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. And under 42 U.S.C. §2000e-5(f)(3) under Enforcement Provisions for remedying disability discrimination by the State.

B.  The court of appeals has jurisdiction over disability discrimination under Enforcement Provisions for disability discrimination at 42 U.S.C. §2000e-5(j) Appeals. [Under the Americans with Disabilities Act of 1990, incl. Amendments Act of 2008, at 42 U.S.C. §12133 Enforcement, remedies are at 29 U.S.C. §794a,

which further indicates remedies procedures and rights include those under 42 U.S.C. §2000e-5(f) through (k).] Also, under 28 U.S.C. §2106, the Court of Appeals may affirm, modify, vacate, set aside, or reverse a judgment, decree, or order of the court and may remand and direct entry of an appropriate judgment, decree, or require further proceedings as may be just.

C. Per Fed.R.App.P. 4(a)(1)(B), the notice of appeal must be filed within 60 days after entry of the judgment or order when one of the parties is the U.S., a U.S. agency, or an officer or employee sued in an official capacity. The district court filed the Opinion and Order refusing to grant anonymity on May 3, 2019. *Doe v. Carson,* 2019 WL 1978428 (W.D. Mich., May 3, 2019) (R. 27, Page ID# 122.) Doe filed this appeal May 17, 2019. (R. 38, Page ID# 125.).

D. This brief is filed under 28 U.S.C. §1291 appealing the order of the district court denying Doe's request to redact her real name from the disability discrimination suit, *Doe v. Carson,* 2019 WL 1978428 (W.D. Mich., May 3, 2019). An interlocutory review can be made of collateral orders that are conclusive, that resolve important questions, and that are effectively unreviewable on appeal from final judgment in the underlying action. *U.S. v. Microsoft Corp.*, 56 F.3d 1448, 1457 (D.C. Cir. 1995).

## VII. STATEMENT OF ISSUES

A. Whether someone who has been determined to be mentally ill has a privacy interest that outweighs the public's right to know their name in a suit--particularly where disability discrimination and accommodations are the main subject of the underlying litigation.

B. If in addition to Doe's case, whether name-redaction should apply to all cases where mental illness is the reason for the request, since most individuals with mental illness would not be capable of bringing suit.

C. Whether or not the denial of anonymity in order for mentally ill persons, including Doe, to freely be able to pursue their Constitutional first amendment right of redress violates due process or equal protection in that anonymity is granted for other statutory reasons and other first amendment rights with far less scrutiny for entities and individuals far more capable of asserting their rights.

D. Whether Doe should be able to amend her complaint in the District Court, which requires an immense time and effort due to her disability, and also financial expense in light of all the copies required by the district court. To prepare this without knowing in advance if it will be accepted is overwhelming. There is no requirement to file a copy with the request in the Fed.R.Civ.P, nor in the local rules if you are not filing electronically.

## VIII.   STATEMENT OF THE CASE

### A.  The reason for the underlying litigation

Doe began having serious problems functioning in 2003 and worked little

through 2004. By 2005 she wasn't able to work at all. Doe got functional brain

scans in 2006.  Doe completed a request for social security disability in March

2010.  After the Social Security Administration requested Doe's medical records in

March 2010 they approved her disability benefits in May 2010, approximately 90

days later. (R. 1, Page ID# 2.).

Doe relies on her children to function successfully because she cannot connect

with others at all and only her children understand her limitations and provide her

assistance. Since moving to Michigan in fall 2013 to be near her son when her

daughter began attending graduate school and going back and forth to/from home

was easier to MI than FL.  There were lots of 'minor' issues dealing with the State

re the housing program which cumulatively added up to a significant mental

burden, but there were some major problems. First, the State nearly caused Doe to

lose her housing voucher being within days of its expiration when they are

supposed to take into account special problems disabled individuals could have in

finding a unit. (R.. 1, Page ID# 8, *citing to* 24 CFR §8.28(a)(4)).  Doe needed to be

in walking distance of her son as neither has a car.  Many people do lose their

housing voucher and Doe could easily have become homeless. A study was published of the acceptance rates of landlords for housing vouchers. "The field team sifted through more than 341,000 rental ads for the five study sites to identify 8,735 units that were available and met both the testing parameters and local voucher program rent limits." Mary K. Cunningham, Martha M. Galvez, (and several others), *A Pilot Study of Landlord Acceptance of Housing Choice vouchers*, Urban Institute (August 20, 2018, executive summary, Sept. 20, 2018 full report), https://www.urban.org/research/publication/pilot-study-landlord-acceptance-housing-choice-vouchers.

Doe had to move again the next year when her building sold. Doe found another place the first week of January 2015. It was very close to her son. The State took actions in conflict with law and nearly caused that opportunity to be lost--specifically by stating a false legal requirement that Doe wait till the first of the month following when a person gave them notice, which was a seven week time-frame from when she found the apartment. The law actually stated the tenant could move when the unit was available. (R. 1, Page ID# 10.) Fortunately, Doe found what may have been the only landlord existing who was willing to wait seven weeks for Doe to move in. Doe was near her son five years till he moved a year ago for another job and Doe needs to be able to move again. It requires money

and being able to discard literally 50% of her possessions. Doe is hopeful this can happen in September 2020.

In the fall 2015, Doe's daughter changed her residence to Chicago. The State can keep figuring a two-bedroom unit (for one person) at the same formula for any of three reasons: due to the unit meeting the needs of a handicap; due to an elderly or disabled person's personal circumstances (R. 1, Page ID# 17.); or even for a remaining tenant when someone has moved out. But instead, they changed calculations to a one-bedroom formula, for the two bedroom unit, supposedly because it was the law with no variance permitted, even after 'double-checking.' Doe believes she was not accommodated because her needs were due to mental handicap. Doe didn't even need to be disabled to get this consideration.

It was after the fourth major event of finding out the State was not per their "mandatory" statutory requirement (R. 1, Page ID# 11-12.) deducting Doe's out-of-pocket medical expenses to figure adjusted income upon which Doe's rent is based, that Doe began reading the statutes and found out that in those previous matters the State was also not following the law. Doe has requested the figures be corrected for all periods since 2013 with interest paid on all deficiencies, to include revising the amounts due to the failure of the State to keep the figures for a two-bedroom unit as they were supposed to have done as an accommodation. Doe cited in her

complaint that at 24 CFR §8.33 it states they are supposed to modify policies and practices to ensure they don't discriminate on the basis of handicap. (R.1, Page ID# 17.)

In an American's with Disabilities (ADA) case, "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." (R.1, Page ID# 19, citing 42 U.S.C. §12132, Discrimination). The private matters to be discussed in this case are the effects of Doe's disability on her life and functioning. The defendants both received copies of Doe's request for accommodations signed by her doctor in November 2013 outlining her limitations and requesting the agency provide an advocate (which was never done) to help Doe negotiate the bureaucracy and meet program requirements. (Copy given to State noted at R.1, Page ID# 8.) The names of the various disorders were again confirmed by a copy of an insurance letter that stipulated the diagnoses after reviewing her medical records. (R. 11-1, Page ID# 75.)

Doe's primary need as a result of her disability is to live near her son. (R. 1, Page ID# 6.) She is not diagnosed with needing to live near her son so there isn't some document to seal as suggested by the R&R. (R. 20, Page ID# 107.) The

private issue in mood disorders is that you have them at all, and beyond that how they are affecting your life. No one can tell you that. It's you who tell them what would be helpful for the challenges you are dealing with, "...reasonable modifications in policies, practices, or procedures shall be required, unless an entity can demonstrate" that making them "would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations involved." (R. 1, Page ID# 19, *citing to* 42 U.S.C. §12201(f) which itself cites 42 U.S.C. §12182(b)(2)(A)(ii)).

## B. Procedural history in the courts

Doe filed a complaint in the District Court in the Western District of Michigan November 2, 2018 (R.1-1, Page ID# 34.), followed by an amendment to the complaint (R. 7, Page ID# 47.) a request for anonymity (R.12, Page ID# 76), and a request to be provided an attorney and amend the complaint (R.11, Page ID# 67.)

The State filed a statement that they did not object to anonymity (R. 13, Page ID# 101.) and that they did not agree to amending the complaint because they didn't know what would be in it. *Id.* The magistrate filed an order disapproving getting a lawyer or filing an amendment to the complaint (R. 19, Page ID# 103.) and an R&R disapproving name-redaction (R. 20, Page ID# 105.)

Doe filed an objection to the Magistrates decision on being able to litigate with anonymity. (R.26, Page ID# 119.) The District Court Judge issued an opinion adopting the Magistrate's R&R. *Doe v. Carson*, 2019 WL 1978428 (W.D. Mich., Jan. 4, 2019). (R. 27, Page ID# 122.) Doe filed an interlocutory appeal of the denial of anonymity. (R.28, Page ID# 125.) And also filed a Motion to Stay Proceedings in the District Court, which was denied by this Court Nov. 1, 2019.

Without explanation or justification, the District Court filed a statement that Doe had filed an appeal in bad faith. (R. 31, Page ID# 167.) On the Affidavit in Support of the Application to proceed in forma pauperis in the district court, Doe's years of education is listed as nineteen. (R. 2, Page ID# 39.) In Doe's amendment to her complaint she states she spent $100 for a treatise on federal law and had eleven binders of notes because she needs to see stuff on paper to mentally process it. (R. 7, Page ID# 58-59.) To have that level of education and invested those amounts with a rather low income would seem to be odd if the purpose was to file a frivolous appeal with a lack of good faith. Admittedly, this appeal would have looked much worse if filed quickly because Doe has functional limitations including slow thinking, but she likes to believe she doesn't have intellectual or ethical problems. She also bought  other books, has about triple the number of

binders of copies of cases, statutes and notes. Doe also needs to write to be able to remember what she reads so there has to be notes on everything.

The District Court dismissed the case. (R. 32, Page ID# 169.) Doe filed an appeal to the case dismissal (R. 34, Page ID# 173.) and also appealed the "lack of good faith" issue, sending that to this Court June 10, 2019, This Court designated the Appeal of Anonymity 19-1566, and the Appeal of Dismissal 19-1714. Doe requested to proceed in forma pauperis in this court, sending that June 10, 2019. This Court issued an opinion that the Request to Stay re district court proceedings had been rendered moot by the case dismissal. Filed Nov. 1, 2019. This Court issued Orders Jan. 8, 2020 granting Doe leave to file in forma pauperis for both appeals, and also combined the two appeals as 19-1566/19-1714.

## IX. SUMMARY OF THE ARGUMENT

Doe filed suit in the district court to obtain relief from discrimination under Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 et seq.; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §701 et seq.; and constitutional violations under due process and equal protection.

Doe requested to file with her real name redacted in the suit to maintain privacy regarding her mental illness. There is support in the Constitution, statutes,

and caselaw for this. The rules are not contra it, and neither defendant filed an objection to the request.

The district court after denying the anonymity request, dismissed the case and filed a statement that Doe's appeal is frivolous and not in good faith. Doe requests permission for anonymity, that the suit be remanded under a different judge, and that Doe be awarded costs plus interest.

## X.     ARGUMENT

### A. There is ample reason to grant anonymity to Doe under either abuse of discretion or de novo review.

#### 1.     Abuse of Discretion

A district court's decision to seal its records is reviewed for abuse of discretion. *Signature Management Team, LLC v. Doe*, 876 F.3d 831, 835 (6th Cir. 2017). "An abuse of discretion exists when the district court applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Id.*

a.  In the order being appealed, neither the magistrate nor the judge discussed the primary issue in contention, mental illness.

b.  The district court didn't do a comparison of the public interests and privacy interests as required by this (and every other) Circuit. The question to determine the public interest is, would you rather know the real name of Doe in this case, or

be able to bring your own discrimination suit against the government if you became mentally disabled and were being discriminated against in helpful programs?

c. The court made errors in identifying the facts in Doe's case to a degree that indicates plaintiff's complaint, other filings, and her response to the magistrate's R.&R. may not have been read.

### 2. de Novo Review

a. Name redaction specific to mental illness is a case of first impression in the Sixth Circuit.

b. There are no facts to be sorted out, this is completely a legal question because Doe's assessment by the Social Security Administration already establishes her as being mentally disabled.

c. The district court made notable errors:

(i) The magistrate indicated that by *not* having three particular issues in the factors they considered which would have provided 'good' reason(s) for anonymity that that somehow 'weighs against' Doe proceeding anonymously. R.&R. 2019 WL 1981886 *2 (W.D. Mich. Jan. 4, 2019). If the reasons Doe has are not among specific ones the court initially looks at doesn't, or at least shouldn't, mean anything negative. The court can consider any number of issues, the ones in prior

cases in this Circuit (required) and any others that make sense in a given fact scenario, but if something doesn't provide a reason *for* anonymity only means it's not applicable or isn't enough by itself or in combination with other factors to convince the judge the reasons for name-redaction are stronger than other considerations. It doesn't 'weigh against' Doe that she is not a child, that she is not going to commit a crime, and that (per the District Court) her issue is not intimate. Someone might not have any of the starting point issues that might favor anonymity, but still have a good reason to pursue a suit anonymously, like the Plaintiff in *Doe v. New Hampshire Lottery Commission*, No. 226-2018-CV-00036, New Hampshire Superior Court, March 12, 2018 (won $560 million in lottery) who was permitted to pursue her suit anonymously.

(ii) It appeared the District Court was using four particular considerations which Doe has understood are intended to be a starting point, as exclusive or restrictive criteria. "Plaintiff's argument fails to demonstrate any error in the Magistrate Judge's ultimate conclusions that all four factors considered together, do not demonstrate the exceptional circumstances necessary to remove this case from the general rule." *Doe v. Carson*, 2019 WL 1978428 *2 (W.D. Mich. May 3, 2019). The court in *Doe v. Stegall*, the case on which a precedent this Circuit, *Doe v. Porter*, 370 F.3d 558 (6th Cir. 2004), is based said, "it would be a mistake to distill

a rigid, three-step test for the propriety of party anonymity from the fact-intensive holding in *Southern Methodist University Ass'n [v. Wynne & Jaffe*, 599 F.2d 707 (5th Cir. 1979)]. The opinion never purports to establish the three common factors it isolates as prerequisites to bringing an anonymous suit." *Doe v. Stegall,* 653 F.2d 180, 185-86 (5th Cir. 1981). And "We advance no hard and fast formula for ascertaining whether a party may sue anonymously. The decision requires a balancing of considerations calling for maintenance of a party's privacy against the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Id.* at 186. *Stegall* considered children and *Doe v. Porter,* 370 F.3d. 558 (5th Cir. 2004) denominated 'children' as a 4th factor. *Porter* at 561. The district court appears to be using a rigid, exclusive four part test.

(iii)The district court failed to discuss mental illness at all in their decision. It's the basis of why Doe is seeking to remain anonymous and she discusses it extensively in her initial request, (R. 12, Page ID# 76.) and in her response to the Magistrate's Report. (R. 26, Page ID# 119.)

In another court, "[T]he impression is powerful indeed that its [the district court's] conclusion was based upon a general rather than a particularized assessment of the equities involved: that as a general proposition party-anonymity at trial is simply not permissible. The court's original ruling, made without

elaboration in the order, in fact almost announces itself as a flat rule of general application based upon strongly felt personal predilection..." *James v. Jameson*, 6 F.3d 239-40 (4th Cir. 1993). This seems to be what happened in Doe's case.

**B. Congress amended the Americans with Disabilities Act after finding individuals were being denied in the courts the benefits Congress had intended by the original legislation.**

"The [original] ADA was passed by large majorities in both Houses of Congress after decades of deliberation and investigation into the need for comprehensive legislation to address discrimination against persons with disabilities," *Tennessee v. Lane*, 541 U.S. 509, 516, No. 02-1667 (2004) "Congress found that 'individuals with disabilities are a discrete and insular minority who have been faced with restrictions and limitations, subjected to a history of purposeful unequal treatment and relegated to a position of political powerlessness in our society, based on characteristics that are beyond the control of such individuals and resulting from stereotypic assumptions not truly indicative of the individual ability of such individuals to participate in, and contribute to society' 42 U.S.C. §12101(a)(7).)" *Id.*

The Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. §12101 et seq., was "An Act to restore the intent and protections of the Americans with Disabilities Act of 1990. (PL 110-325 (S 3406) September 25, 2008). The

impetus for the Amendment was the imposition of severely restrictive criteria the courts were imposing on plaintiffs to obtain relief under the original statute of 1990. (Pub.L. 110-325, §2(a)(4)-(7),s Sept. 25, 2008, 122 Stat. 3553.) (R. 1, Page ID# 17-18.)

It's very difficult for statutes and rules to articulate specifics in support of mental disabilities because the variance in the effects of brain disorders is vast. But it's clear mentally disabled individuals are comprised in the legislation.  In the very first line of Section 12101(a), Findings, Congress finds that "(1) physical or *mental* disabilities in no ways diminish a person's right to fully participate in all aspects of society." (emphasis provided).

### C. Doe is not able to understand the suggestion by the district court that this appeal is frivolous when so many other courts grant anonymity for the reason of mental illness.

The district court judge filed an order denying leave to proceed in forma pauperis on appeal. (R. 31, Page ID# 167.) She indicated that "an appeal is not taken in good faith if the issue presented is frivolous, defined as lacking an arguable basis in fact or law. See *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001)." *Id.*  Doe doesn't understand how this appeal can be frivolous when there are so many courts that consider mental illness a reason to allow anonymity. Doe has identified some cases as examples:

In *Michigan Protection & Advocacy Service, Inc. v. Caruso*, 2006 WL 958496

(W.D. Mich. April 10, 2006) "a lawsuit involving the mental health and

correctional treatment of young prisoners," at *1, the Plaintiff organization

requested a protective order to conceal their identities. *Id*. The court, "The

information at issue includes confidential medical and mental health information of

a vulnerable population of young inmates." *Id*. at *2. "The public does not have a

legitimate expectation in the disclosure of private health information and the youth

and vulnerability of the offenders, shift the balance away from public openness and

permit the prosecution of this action without public disclosure of the identities of

the young persons." *Id*. at *3. Doe reads these as two separate reasons for

anonymity, not one dependent on the other.

"Courts have permitted plaintiffs to sue anonymously in cases involving mental

illness, *Doe v. Colautti* 592 F.2d 704 (3d Cir. 1979),... the social stigma attached to

the plaintiff's disclosure was found to be enough to overcome the presumption of

openness in court proceedings." *Doe v Frank,* 951 F.2d 320, 324 (11th Cir., 1992).

"Examples of areas where courts have allowed pseudonyms include cases

involving 'abortion, birth control, transexuality, mental illness, welfare rights of

illegitimate children, AIDS, and homosexuality.'." *Doe v. Megless*, 654 F.3d 404,

408 (3d Cir. 2011). "Because the flyer neither accused Doe of criminal behavior or

mental illness, nor disclosed highly sensitive personal information, he did not demonstrate that disclosing his identity would cause him substantial 'irreparable harm'." *Megless* at 410.

Plaintiff in *Doe v. Provident Life*, 176 F.R.D. 464, 465 (E.D. Pa. 1997) is diagnosed with a general anxiety disorder, dysthymic disorder (depression), adult ADD, personality disorder, and occupational stress from a previous position as an employee benefits insurance broker and is permitted to redact his name from filings. He is concerned that if friends and business associates learn of his psychiatric problems he will be stigmatized in the community. *Provident* at 468. "[T]here is a great risk that plaintiff will be stigmatized in his professional life." *Id.* There is substantial public interest in maintaining the confidentiality of plaintiff's name..." *Id.* "...[A] decision against this plaintiff will deter other individuals with mental illness from suing to vindicate their rights. *Id.* And, "unscrupulous insurance companies will be encouraged to deny valid claims with the expectation that these individuals will not pursue their rights in court." *Id.* "Additionally, a public figure is not involved in this case " which would increase the interest of the public in the name. *Id* at 469.

Another plaintiff suffers from Asperger's Syndrome, Acute Stress Disorder, Panic Disorder, post-traumatic stress disorder, and anxiety. *Doe v. Sessions*, 2018

WL 4637014 *1 (D.D.C. Sept. 27, 2018). After 25 years working at the FBI, at a particular point co-workers began ridiculing him, threatening him and he was falsely accused of violating FBI procedures. *Id.* This harassment led to him having panic attacks and other conditions that caused him to take multiple sick leaves. *Id.* He was demoted. *Id.* When he sought accommodations for his mental conditions, the program coordinator informed his supervisors of his mental health problems. *Id.* He was not provided accommodations and was ultimately terminated. *Id.* He filed suit under The Rehabilitation Act of 1973 and civil rights violations for denial of reasonable accommodations for his disabilities, a hostile work environment, discriminatory termination, and breach of confidentiality when his medical information was exposed. *Id.* His request for filing pseudonymously was due to severe mental trauma, his right to confidentiality of his medical information, and because he needed to maintain a sensitive position at the FBI that requires a security clearance. *Id.* "The Court concludes that Plaintiff's mental conditions alone justify pseudonymous filing." *Id* at *3. The court indicates that if Plaintiff goes through this litigation in his real name he will be further traumatized that his information will remain forever public. *Id.* at *4.

*Doe v. Hartford Life and Accident Insurance Co.*, 237 F.R.D. 545, (D. N.J. July 14, 2006) discusses many relevant points about the impact on a mentally ill person

of a breach of privacy. "Plaintiff asserts that being forced to litigate under his real name would: (1) stigmatize him in the community, (2) cause him to suffer tremendous anxiety, (3) potentially worsen his medical condition and (4) potentially ruin any prospects of returning to work in the future." *Hartford Life* at 547. "Plaintiff is especially worried about the damage that might result to his professional career as an attorney if knowledge of his medical condition, and the constant anxiety and obsessiveness he battles, became public knowledge." *Id.* "There is substantial public interest in ensuring that cases like the Plaintiff's are adjudicated and the rights of mental illness sufferers are represented fairly and without the risk of stigmatization. However, this goal can not be achieved if litigants suffering from mental illness are chilled from ever reaching the courthouse steps for fear of repercussion that would ensue if their condition was made public. Although any litigant runs the risk of public embarrassment by bringing their case and revealing sensitive facts in a courtroom, the situation here is vastly different because Plaintiff's bi-polar condition is directly tied to the subject matter of the litigation--his mental illness and the disability benefits he allegedly is entitled to as a mental illness sufferer. In this case, Plaintiff's situation is analogous to a woman seeking an abortion or a homosexual fired from his job because of his sexual orientation....Plaintiff is faced with circumstances that society

may not yet understand or accept and his condition is directly tied to the issues before the court." *Hartford Life* at 550.

Each of the cases cited above were decided prior to this judge deciding an anonymity case on the basis of mental disability in *G.E.G. v. Shinseki,* 2012 WL 381589 (W.D. Mich. Feb. 5, 2012) (privacy protection denied), except *Doe v. Sessions* which Doe cited in her *Retaining Anonymity: Motion and Brief* at R. 12, Page ID# 84-86. *Michigan Protection* was the only case that Doe could find in this district involving anonymity and mental illness before or after *G.E.G.* so it seems odd that it was not referenced or distinguished.

Doe would undoubtedly have cited more cases in her original request for anonymity and in the objection to the magistrate's response if Doe had known she could access Westlaw at those times.

**D. Doe has a first amendment right to the redress of grievances without roadblocks keeping her from doing so in the same way other first amendment rights are protected by the courts.**

**1.    Freedom of Association**

In a case regarding the discovery of internal communications of a group advocating a particular ballot proposition, "[T]he government must justify its actions not only when it imposes direct limitations on associational rights, but also when governmental action 'would have the practical effect of discouraging  the

exercise of constitutionally protected political rights.' " *Perry v. Schwarzenegger*, 591 F.3d 1147, 1159-60 (9th Cir. 2010) (quoting *NAACP v. Alabama*, 357 U.S. 449, 461, 78 S. Ct. 1163, 2 L. Ed. 2d 1488 (1958)). "Such actions have a chilling effect on, and therefore infringe, the exercise of fundamental rights. Accordingly, they 'must survive exacting scrutiny.' " *Perry* at 1160 (quoting *Buckley v. Valeo*, 424 U.S. 1, 64, 96 S. Ct. 612). "The compelled disclosure of political associations can have just such a chilling effect. *See id.* ('[W]e have repeatedly found that compelled disclosure, in itself, can seriously infringe on privacy of association and belief guaranteed by the First Amendment.'); *AFL-CIO v. FEC*, 333 F.3d 168, 175 (D.C.Cir. 2003) (The Supreme Court has long recognized that compelled disclosure of political associations and activities can impose just as substantial a burden on First Amendment rights as can direct regulation)." *Perry* at 1160. We can't be worried about discouraging and the chilling effects of actions that inhibit association and not also be concerned with the chilling effect of someone who is mentally ill not being able to insist on constitutional treatment by federal agencies.

## 2. Right to Privacy

A discussion was contained in one of the birth control cases, *Griswold v. Connecticut,* 381 U.S. 479, 483 (1965), 85 S. Ct. 1678, 14 L. Ed. 2d 510, "In *NAACP v. Alabama*, 357 U.S. 449, 462, we protected the 'freedom to associate and

privacy in one's associations,' noting that freedom of association was a peripheral First Amendment right." *Griswold v. Connecticut,* 381 U.S. 479,483 (1965) , 85 S. Ct. 1678, 14 L. Ed. 2d 510. "Disclosure of membership lists of a constitutionally valid association, we held, was invalid 'as entailing the likelihood of a substantial restraint upon the exercise by petitioner's members of their right to freedom of association.' Ibid. In other words, the First Amendment has a penumbra where privacy is protected from governmental intrusion. In like context, we have protected forms of 'association' that are not political in the customary sense but pertain to the social, legal, and economic benefit of the members. *NAACP v. Button*, 371 U.S. 415, 430-31 [(1963)]." *Griswold* at 483. "The right of 'association,' like the right of belief..., is more than the right to attend a meeting; it includes the right to express one's attitudes or philosophies by membership in a group or by affiliation with it or by other lawful means. Association in that context is a form of expression of opinion; and while it is not expressly included in the First Amendment its existence is necessary in making the express guarantees fully meaningful." *Griswold* at 483. "The foregoing cases suggest that specific guarantees in the Bill of Rights have penumbras, formed by emanations from those guarantees that help give them life and substance. *See Poe v. Ullman*, 367 U.S.

497, 516-522 [(1961)] (dissenting opinion). Various guarantees create zones of privacy." *Griswold* at 483-84.

### 3.    Freedom of Religion

A first amendment case was decided in this Circuit, *Doe v. Porter, 370 F.3d 558* (6th Cir. 2004), where anonymity was granted to protect the first amendment right of freedom of religion.  In *Doe v. Porter*, parents and their three children under fictitious names filed suit against the County School Board, challenging the constitutionality of religious instruction in the schools. *Id*. at 560.  They disclosed their identities to defendant's counsel, but obtained a protective order from sharing their identities with anyone else. *Id*. at 561.  After suit was filed, threats were made against the anonymous filers.  *Id*. at 560.  This case shared virtually identical facts with the *Stegall* case.  Like in *Stegall*, this court considered religion "the quintessentially private matter." *Id*. The suit concerns "revelations about their personal beliefs and practices that are shown to have invited an opprobrium analogous to the infamy associated with criminal behavior." *Id*. And like in *Stegall*, plaintiffs in the case against this public school included children, deemed to have special vulnerability. *Id*. at 561.  Consistent with *Stegall*, the identity of the party was deemed less important than protecting a matter traditionally kept private.

### 4. Freedom of Speech

The most recent first amendment case in this Circuit was about Freedom of Speech is *Signature Management Team, LLC. v. Doe*, 876 F.3d 831 (2017). It was a suit for copyright infringement brought against an anonymous Doe blogger, and the Plaintiff wanted to know the name of the blogger. *Sig Mgmt.* at 834. The district court balanced the magnitude of the harms that would be caused to competing interests. *Id.*

In *Sig. Mgmt.*, "the district court concluded that unmasking an anonymous speaker is a significant and irreversible harm." *Sig. Mgmt.* at 834. The dist. court thought he might prevail on his fair-use defense in the copyright infringement case and issued a protective order with Doe being required to reveal his identity to the court and to Plaintiff's attorneys with a prohibition on them sharing the information with their client. *Id.* The ultimate result in the district court was that unmasking Doe was deemed unnecessary to ensure he would not infringe on plaintiffs copyrights again, and defendant complied with destroying whatever copies he still had of the material. *Id.* at 835. *Sig. Mgmt.* appealed to the Circuit Court to find out the identity of Doe. The Court identified the Standard of Review as abuse of discretion, but decided to review the case without deference. *Id.* The Court states the presumption of openness in court proceedings, that only the most compelling

reasons can justify non-disclosure of court records and any seals should be narrowly drawn--further noting that *the burden on the party seeking non-disclosure is diminished where there is minimal public interest in learning the non-disclosed information. Id.* at 836-37. "Determining the public interest in the disclosure of the identity of a Doe defendant is a fact-intensive inquiry." *Id.* at 837. The court discusses in a libel suit at issue are factors such as if the topic is of public concern or if someone is a well-known figure. *Id.* The court should identify the public interest in the content of the subject matter of the litigation. *Id.* The court further states the plaintiff would have little need to unmask a Doe defendant who has willingly participated in the litigation and complied with the relief, and "where the public interest is minimal and the Doe defendant's interest in remaining anonymous is substantial" the district court can make sure the judgment is enforced and then balance the free speech interests of defendant with the rights of the Plaintiff and the public's right to know the name of the defendant. *Id.* at 837-38. "[T]he ability to speak anonymously on the Internet promotes the robust exchange of ideas and allows individuals to express themselves freely without 'fear of economic or official retaliation...[or] concern about social ostracism'." *Sig. Mgmt.* at 835-36 quoting *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011). The court states, "where the anonymous defendant is determined to have fully

complied with the relief granted, there is no practical need to unmask the defendant." *Id*. There is no more need to reveal a Doe plaintiff since either is equally absent from the caption.

### 5. Right to seek Redress in the Courts

Doe's case is of the same tenor as the other first amendment cases. Doe's first amendment right of redress is more important and should take priority over giving exposure of court records to the general public. In the Annals of Congress, the Bill of Rights from their introduction, June 8; debate, August 15; and approval in the house, September 24,1789 and the 25th in the senate, the right to redress has been there from the beginning. (attachment 1). "No provision of the Constitution was meant to be without effect." *Marbury v. Madison*, 5 U.S. (Cranch 1) 174 (1803).

### 6. Due Process and Equal Protection

As regards frequent court indifference to the effect on someone's career in many name-redaction cases there doesn't appear to be support in law. Where a man was convicted of non-felony charges of disorderly conduct and interference with a police officer in violation of city ordinances in *Mayer v. City of Chicago*, 404 U.S. 189 (1971), 92 S. Ct. 410, 30 L. Ed. 2d 372, he was sentenced to a fine of $250 each, or a maximum penalty of $500. *Mayer* at 190. He requested a free transcript in order to appeal indicating the evidence was insufficient and

prosecutorial misconduct is what caused a conviction and it was not a fair trial. *Id.*
The circuit court found he was indigent, but the state provision of providing a
transcript was only for felony cases. *Id.* at 191. The Court cites *Griffin v. Illinois*,
351 U.S. 12 (1956) as providing that the constitutional guarantees of due process
and equal protection should not let ability to pay determine someone's guilt or
innocence. *Mayer* at 193. The state must provide indigents as adequate and
effective an appellate review as that given appellants with funds. *Mayer* at 194
(citing *Draper v. Washington*, 372 U.S. 487, 496 (1963)). In dispelling the City's
argument that he only had to pay a fine and was not given a jail sentence, the court
says, "The invidiousness of the discrimination that exists when criminal procedures
are made available only to those who can pay is not erased by any differences in
the sentence that may be imposed." *Mayer* at 197. "The practical effects of
conviction of even petty offenses of the kind involved here are not to be
minimized....The collateral consequences of conviction may be even more serious,
as when (as was apparently a possibility in this case) the impecunious medical
student finds himself barred from the practice of medicine because of a conviction
he is unable to appeal for a lack of funds." *Mayer* at 197. This court is concerned
about collateral consequences of his exposure and being kept from practicing his

profession. As should courts be with protecting collateral consequences of exposure of their names and their mental illness.

### E. Statutory law supports protecting private medical information, particularly related to mental illness, private.

Courts are not required to follow federal statutory law such as the Freedom of Information Act, *Brown & Williamson Tobacco Corp. v. FTC,* 710 F.2d 1165, 1177 (6th Cir. 1983) (citing 5 U.S.C. §551(1)(B)), but they usually do. Privacy rights "of participants or third parties, trade secrets and national security" are content based restrictions of the right to access under common law. *Brown & Williamson v. FTC,* 710 F.2d 1165,1179 (6th Cir. 1983), citing *Nixon v. Warner Communications,* 435 U.S. 589, 598, 98 S.Ct. 1306, 55 L.Ed. 2d 570 (1978)

The primary reason for the Freedom of Information Act, 5 U.S.C. §552(b), was to assure accountability of government agencies. "The Government should not keep information confidential merely because public officials might be embarrassed by disclosure, because errors and failures might be revealed, or because of speculative or abstract fears. Nondisclosure should never be based on an effort to protect the personal interests of Government officials at the expense of those they are supposed to serve." Memorandum of January 21, 2009, Freedom of Information Act, Memorandum for the Heads of Executive Departments and Agencies, 50 Fed. Reg. 74, 15 (The President January 26, 2009). Clearly the

reason for the exceptions under 5 U.S.C. 552(b) is because the point of the

legislation of opening agency information to the public was not to reveal private

information about individuals or companies. Doe's case in the district court is

about unlawful behavior on the part of a federal agency and those organizations

carrying out it's programs. Federal legislation creates an *express* intent to route out

such behavior.

1.     In *In re Knoxville News-Sentinel Co.* 723 F.2d 470, 472-73 (6th Cir.

1983) the Court determined the district court did not abuse its discretion by

expunging information from the court record regarding the private bank accounts

of two third parties. *Knoxville News* at 475. The Court noted statutory

requirements to maintain the privacy of the records at The Right to Financial

Privacy Act, 12 U.S.C. § 3401-3421. Further it is a federal crime for bank

examiners to disclose information obtained in the course of examining a federally

insured bank as was the case here. 18 U.S.C. 1906. "Congressional recognition of

the confidentiality of bank records is illustrated in 5 U.S.C. 552(b)(8)" *Knoxville

News* at 476.

2.     In the case *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct.

2356 (2019), under FOIA, Argus Leader, a newspaper, asked the USDA for the

names and addresses of all retail stores who participated in the Supplemental

Nutrition Assistance Program and for each store's annual redemption data from 2005-2010. *Argus* at 1.  USDA indicated that if they promised to maintain sales data confidential they cannot give it out. *Id.* Eighth Cir. indicated "commercial information cannot be deemed 'confidential' unless disclosure is 'likely...to cause substantial harm to the competitive position of the person from whom the information is obtained.' *Argus Leader Media v. United States Dept. of Agriculture*, 889 F.3d 914, 915 (2018) (internal quotation marks omitted)." Argus at 2.

"Exemption 4 shields from mandatory disclosure 'commercial or financial information obtained from a person and privileged or confidential.' 5 U.S.C. 552(b)(4)." *Argus* at 5.  The court reviews the definition of the word confidential and found it to mean 'private' or 'secret' in *Webster's Seventh Collegiate Dictionary*, 174 (1963). Another suggestion is that information is supposed to remain confidential when it is customarily kept private, or at least closely held, by the person imparting it. citing to *Webster's Third New International Dictionary* 476 (1961), and "*Black's Law Dictionary* 370 (rev. 4th ed. 1968) ('intended to be held in confidence or kept secret')." Or per *Oxford Universal Dictionary Illustrated* 367 (3d ed. 1961) if there is some assurance given that the information will remain secret. *Argus* at 5.  At least the first of these requirements must be met. *Argus* at 6.

The Court indicated, "that Exemption 4 would 'protect information that a private individual wishes to keep confidential for his own purposes, but reveals to the government under the express or implied promise' of confidentiality." *Argus* at 6. "In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself." (citation omitted). *Argus* at 8. "Where, as here, that examination yields a clear answer, judges must stop." (citation omitted). Argus at 8. "At least where commercial or financial information is both customarily and actually treated as private by its owner and provided to the government under the assurance of privacy, the information is 'confidential' within the meaning of Exemption 4. *Argus* at 12. If the law concerns itself with the ability of companies to be competitive, how would it be they would want to see an individual's future career opportunities terminated? This case was decided later than the district court opinion in Doe's case, but it can't be disregarded.

3.    In *Detroit Free Press, Inc. v. United States Dept. of Justice* (*Free Press II*), 829 F.3d 478, 480 (6th Cir. 2016), the court overruled a prior decision about the publication of booking photos.   The Supreme Court described exemption 5 U.S.C. §552(b)(7)(C) as reflecting privacy interests in 'avoiding disclosure of personal matters.' *Free Press II* at 481 quoting *Dept. of Justice v. Reporters Comm. for Free*

*Press*, 489 U.S. 749, 762 (1989). "Disclosure of records containing personal details about private citizens can infringe significant privacy interests." *Reporters. Comm*, 289 U.S. at 766. "Also supporting our conclusion that a strong privacy interest inheres in the non-disclosure of compiled computerized information is the Privacy Act of 1974, codified at 5 U.S.C. §552a (1982 ed. and Supp. V). The Privacy Act was passed largely out of concern over 'the impact of computer data banks on individual privacy.' H.R.Rep. No. 93-1416, p. 7 (1974)." *Id*.

There is a non-trivial interest in booking photos. *Free Press II* at 482. "Other Supreme Court decisions strengthen our conclusion. For example, the Court noted that the Exemption 7(C) privacy interest 'must be understood...in light of the consequences that would follow' from unlimited disclosure." (citations omitted) *Id*. "[I]n today's society the computer can accumulate and store information that would otherwise have surely been forgotten." *Id*. (quoting *Reporter's Comm*., 489 U.S. at 771, 109 S. Ct. 1468). "A disclosed booking photo casts a long, damaging shadow over the depicted individual." *Id*. "Potential employers and other acquaintances may easily access booking photos on these websites, hampering the depicted individual's professional and personal prospects." *Id*. at 483.

Having found a non-trivial privacy interest, the court must balance that interest against the public's interest in disclosure. *Id*. at 484. "The public's interest in

disclosure depends on 'the extent to which disclosure would serve the "core purpose of the FOIA," which is 'contribut[ing] significantly to public understanding *of the operations or activities of government*.'" *U.S. Dept. of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495, 114 S. Ct. 1006, 127 L.Ed.2d 325 (1994) (alteration in original) (quoting Reporter's Comm., 489 U.S. at 775, 109 S.Ct. 1468)." *Free Press II* at 485. "[I]f disclosure is not 'likely to advance [a significant public] interest..., the invasion of privacy is unwarranted." *Id.* (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172, 124 S.Ct. 1570, 158 L.Ed.2d 319 (2004)). "'Shedding light on an agency's performance of its statutory duties falls squarely within' FOIA's core purpose. *Reporter's Comm.*, 489 U.S. at 773, 109 S.Ct. 1468. On the other hand, that purpose 'is not fostered by disclosure of information about private citizens...that reveals little or nothing about an agency's own conduct.' *Id.*" *Free Press II* at 485. "In 1996, this court could not have known or expected that a booking photo could haunt the depicted individual for decades." *Id.* Virtually all the discussion about protecting a person in this case is equally applicable to protecting someone who is mentally ill.

4.      5 U.S.C. § 552(b)(6) indicates exposure of medical files "would constitute a clearly unwarranted invasion of personal privacy."; 5 U.S.C. §552(b)(3) states information specifically exempted under other statutes is also

exempted from disclosure. Medical information is also protected by Health Insurance Portability and Accountability Act of 1996 (HIPAA). (attachment 2)

Entities may provide medical records from an order by a court or agency in response to a subpoena or other lawful process "if certain assurances regarding notice to the individual or a protective order are provided." *Summary of the HIPAA Privacy Rule*, U.S. Dept. of Health and Human Services, Office for Civil Rights, HIPAA Compliance Assistance *7, 45 CFR §164.512(e). "The Privacy Rule protects all *'individually identifiable health information'* held or transmitted by a covered entity or its business associate, in any form or media, whether electronic, paper, or oral." (emphasis in original) *Summary of the HIPAA Privacy Rule*, U.S. Dept. of Health and Human Services, Office for Civil Rights, HIPAA Compliance Assistance, *.3-4 "What Information is Protected." Last Revised 05/03. citing to 45 CFR §160.103 (attachment 2). There is little doubt the rules of HIPAA are taken seriously. See, Thomas Azar, *Banner Health in $6M settlement over data breach*, The National Trial Lawyers Top 100 (Dec. 9, 2019), https://www.thenationaltriallawyers.org/2019/12/banner-health-in-6m-settlement-over-data-breach; EMS1 Staff, *$3M settlement reached in URMC HIPAA case involving stolen flash drive, laptop,* EMS1.com (Nov. 8, 2019),

https://www.ems1.com/ems-products/secure-communications/articles/3m-settlement-reached-in-urmc-hipaa-case-involving-stolen-flash-drive-laptop.

In the case *In re: E.I. DuPont de Nemours and Company C-8 Personal Injury Litigation*, 2019 WL 3208711 at *1 (S.D. Ohio, July 16, 2019) "the court finds that the public has an interest in this action. However, the information sought to be sealed is the medical records and private health information of Ms. Swartz and a family member.... The strong federal policy in protecting the nondisclosure of private health information under the Health Insurance Portability and Accountability Act of 1996 (HIPAA) outweigh the public's interest in the disclosure of these materials..." . Also, "the public does not have a legitimate expectation in the disclosure of private health information." *Michigan Protection & Advocacy Service v. Caruso,* 2006 WL 958496 at *3 (W.D. Mich. Apr. 10, 2006). The court has "inherent and common law authority to seal court records and allow parties to proceed by pseudonym. Federal law, including the Local Rules, assumes such authority and assumes that it will be exercised to prevent unwarranted disclosures of confidential information." *Id.*

Disparities exist in the granting of name-redaction in cases between between different sections of the First Amendment; different FOIA subjects; plaintiffs and defendants; and between the ability to protect the financial/competitive viability of

a business, and the ability of individuals to protect a professional career from being rendered impossible. As a matter of equal protection, those disparities should be rectified. Litigating disability matters in one's real name will affect the risk of economic retaliation and social ostracism as put forth as an important concern in *Signature Mgmt* at 835-86. How is this a valid consideration for a defendant concerned with free speech but not a plaintiff with mental illness seeking access to the courts? Someone seeking the right of redress will be just as chilled from pursuing their rights without anonymity.

**F.     The Federal Rules of Civil Procedure do not preclude the use of pseudonyms.**

Fed.R.Civ.P. 17 advisory committee's note to 1966 amendment indicates that the rule about using the name of the real party in interest was to protect the defendant against a subsequent action by the party actually entitled to recover so that a judgment has the proper res judicata effect Fed.R.Civ.P. 17, advisory committee's note to 1966, end of 3d para., and provides examples of why using Doe doesn't work in certain contexts "to insure against forfeiture and injustice." Fed.R.Civ.P. 17 advisory committee's note to 1966, para. 4. If there were an airplane crash and John Doe sues on behalf of Richard Roe, in the hope that at a later time the attorney filing the action may substitute the real name of the real personal representative of a real victim, and have the benefit of the suspension of

the limitation period. Or if the personal representative of John Smith files in the good faith belief that he is on the flight, but then discovers he missed the flight, but that by having used Doe he cannot thereafter find another actual victim to substitute as Doe in that case to suspend the limitations period. Fed. R. Civ. P. 17 advisory committee's note to 1966, para. 3.

Fed.R.Civ.P. 10 states "the title of the complaint must name all the parties." *Porter* at 560. Naming parties in litigation per rule 10(a) was not discussed in the *Sig Mgmt.* case and was just a footnote in *Doe v. Immigration and Naturalization Service, United States Dept. of Justice*, 867 F.2d 285, 291 n.1 (6th Cir. 1989) (statement use of pseudonyms not favored, but done to protect petitioners family). so it varies between considered significant or not. Doe believes that some cases are so obviously deserving of anonymity that they should redact all personal identifiers without spending time on going through the motions of analysis which perhaps some courts over analyze, looking for a reason to disallow anonymity because it's 'disfavored,' like the district court cases that were appealed in *Does XXIII v. Advanced Textile Corp.*, 214 F.3d 1058 (9th Cir. 2000); *Doe v. Porter,* 370 F.3d 558 (6th Cir. 2004); *and James v. Jameson,* 6 F.3d 233 (4th Cir. 1993).

**G.     Using a pseudonym allows having an open trial and open court records without the need to seal any portions of the file.**

"The equation linking the public's right to attend trials and the public's right to know the identity of the parties is not completely symmetrical. The public right to scrutinize government functioning, 100 S.Ct. 2827, is not so completely impaired by a grant of anonymity to a party as it is by a closure of the trial itself. Party anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them. The assurance of fairness preserved by public presence at a trial is not lost when one party's cause is pursued under a fictitious name. These crucial interests served by open trials, see *Richmond Newspapers [v. Virginia,* 448 U.S. 555 (1980)], 100 S.Ct. at 2826-29, are not inevitably compromised by allowing a party to proceed anonymously." *Doe v. Stegall,* 653 F.2d 180, 185 (5th Cir. 1981).

Another case,"The district court characterized this case as one with 'widespread implications of interest to the public at large', but concluded, without analysis, that the public interest would be served by requiring plaintiffs to reveal their identities. The district court did not explain, and we fail to see, how disguising plaintiffs' identities will obstruct public scrutiny of the important issues in this case." *Does thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1072 (9th Cir. 2000) (employees suing employer).

In *G.E.G v. Shinseki,* 2012 WL 381589 (W.D. Mich. Feb. 6, 2012) was decided by the same judge as in Doe's case. G.E.G. is seeking anonymity on the basis of mental illness. He stated the defendant knows his identity and the defense of the case is not impeded, but the court, says, "Nonetheless, the court must weigh the public's interest in disclosure" and lack of prejudice to defendant "does not outweigh the countervailing considerations." *G.E.G.* at *4 n.1 *But no evaluation of the public's interest was in the opinion and the "countervailing considerations" are not identified.*

There is a law review article that discusses the grinder plaintiffs are going through with too severe a process in too many district courts. Jayne S. Ressler, *#worstplaintiffever: Popular Public Shaming and Pseudonymous Plaintiffs*, 84 *Tennessee Law Review* 779, Summer (2017). (attachment 3)

**H.    Significant errors were made by the district court in Doe's case that it puts into doubt that her submissions were read.**

**1.    Doe is not seeking to obtain government housing as stated by the district court.**

The Magistrate in the District Court filed a Report and Recommendation (R&R) disapproving anonymity. *Doe v. Carson,* 2019 WL 1981886 (W.D.Mich., Jan. 4, 2019). At the beginning the R&R says the matter is brought "with respect

to her attempts *to obtain* government subsidized housing." (emphasis provided) (R. 20, Page ID# 105.)

The very first page of the Complaint in this lawsuit is "SUMMARY OF THIS LAWSUIT." (R. 1, Page ID# 2.) The very first sentence is, "Plaintiff, Jane Doe, filing Pro Se, *is a participant in* the Housing Choice Voucher Program (Section 8)" (emphasis provided). *Id.* In paragraph 6, "Doe became a 'participant ' in the Housing Voucher program and used a Section 8 Voucher in 2008." (R. 1, Page ID# 4.) In paragraph 10, "Doe is already a participant in the Housing Voucher program having met the essential requirements." (R. 1, PageID# 5-6.) The district court cannot have read this complaint and thought Doe was "seeking to *obtain* government subsidized housing" after she said repeatedly she is a "participant" in the program.

**2.    Doe did not fail to seek permission to file anonymously as suggested by the district court.**

a.    Contrary to the facts, failure of a plaintiff to seek permission to have their name redacted fills a paragraph in the R&R in Doe's case (R. 20, Page ID# 106.), and is repeatedly put forth as an issue by the district court in other cases where it also has no relevance. "Failure by a Plaintiff to obtain court approval to proceed anonymously deprives the court of jurisdiction to hear the matter. (See [Citizens of a Strong Ohio v.] *Marsh*, 123 Fed. Appx. at 636-37) ('[f]ailure to seek permission

41

to proceed under a pseudonym is fatal to an anonymous plaintiff's case, because...
the federal courts lacks jurisdiction over the unnamed parties, as a case has not
been commenced with respect to them.'). While Defendants have not expressed any
objection to plaintiff proceeding anonymously, the Court nevertheless has an
obligation to address the matter given it affects the court's jurisdiction." *Doe v.
Carson*, 2019 WL 1981886 *1 (W.D. Mich. Jan. 4, 2019). This entire paragraph
has no application in Doe's case and stating it *in response to a request for
anonymity* is illogical.

    b. The R&R (by same magistrate as Doe's case) in *Doe v. U. of Pittsburgh,
2018 WL 3029085 (W.D. Mich. Jan. 12, 2018)* begins, "This matter is before the
Court on Plaintiff's Motion for Protective Order...Plaintiff is proceeding in the
matter as Jane Doe despite failing to obtain authorization from the Court to so
proceed." Pittsburgh at *2018 WL 3029085 *1* If Plaintiff submits this request to
proceed anonymously in her actual name that would appear to defeat the purpose
of requesting anonymity. The exact statement from *Marsh* about failure to seek
permission as was in Doe's case is word for word in *Doe v. Pittsburgh*, 2018 WL
3029085. In *Pittsburgh*, "On September 7, 2017, the Court ordered Plaintiff to
show cause why this matter should not be dismissed for lack of jurisdiction.
Plaintiff responded by submitting a Motion for a Protective Order." *Doe v.*

*Pittsburgh*, 2018 WL 3029085 at *1 . The magistrate here *is now responding* to *the request for a protective order*. The failure to request permission statement *had application* in the show cause order dated Sept. 7, 2017 ( Doe was unable to obtain a copy), but if the plaintiff has now submitted a request and the magistrate is evaluating that now, Doe fails to see how repeating that information from *Marsh* about failing to seek permission makes sense here.

c.   And (same magistrate's R&R as in Doe's case), "This matter is before the court on *Plaintiff's Motion for Leave to Proceed Anonymously*." *Doe v. Whitmer*, 2019 WL 4645686 *1 (W.D. Mich., July 1, 2019) but still, "Failure by a plaintiff to obtain court approval to proceed anonymously deprives the Court of jurisdiction to hear the matter. *See Citizens for a Strong Ohio v. Marsh*, 123 Fed.Appx. 630, 636-37 (6th Cir. Jan. 3, 2005) ("[f]ailure to seek permission to proceed under a pseudonym is fatal to an anonymous plaintiff's case, because...the federal courts lack jurisdiction over the unnamed parties, as a case has not been commenced with respect to them"). While Defendants have not yet appeared, the Court nevertheless has an obligation to address the matter given that it affects the Court's jurisdiction)" *Id*. How does it make sense in the first line to say you are here because the plaintiff requested to proceed anonymously and then make statements indicating the plaintiff has failed to request to proceed anonymously? This is a sex offender

case and anonymity was granted. *Id.* *1, *2. The decision looks right, and then in a footnote, "The Court has no opinion regarding, and this Report and Recommendation does not address, the propriety or necessity of any protective order or similar order governing the use or revelation of Plaintiff's name during the course of this litigation." *Id.* * 2  n.1.  Although Doe has not seen this plaintiff's request, Doe is of the impression that the plaintiff was asking to proceed anonymously *during the course of the litigation.* When this plaintiff is going to be anonymous is not clear.

d.  *Citizens for a Strong Ohio v. Marsh,* 123 Fed.Appx. 630 (6th Cir. 2005) is different than these other cases being cited in the district courts.  In it was a particularly vague description of John Doe, where the identity of a real person was unknown by the court and/or the defendant.  The Court indicated that by using Doe, plaintiffs could use "straw men" in future actions that seek to interfere with pending state court proceedings so plaintiffs could ensure at least one claim went forward in federal court thereby circumventing the *Younger* abstention. *Id.* at *6. *Nat'l Commodity & Barter Ass'n v. Gibbs,* 886 F.2d 1240 (10th Cir. 1989) to which *Marsh* cites, is on this same order.  The allegations made by the plaintiffs "purport to detail these activities by listing the particular federal agents involved in them; however, there is little identification, if any, of the persons targeted by these

activities, the specific dates of the events, or the particular property seized." *Nat'l Commodity* at 1244. Also plaintiffs were several named individuals and "members subscribers" of the commodity exchange. *Id.* The complaint did not list the names of the individual members whose rights were allegedly violated. *Id.* "The unnamed plaintiffs have made no request to the district court for permission to proceed anonymously, nor have they otherwise disclosed their identities to the court or to the defendants." *Id.* at 1245. These are completely unknown people who cannot even be verified to exist.

Other similar cases, *Does 1-114 v. Shalushi, 2010 WL 3037789 (E.D. Mich. July 30, 2010)* was comprised of plaintiffs in fear of retaliation by defendants if their identities were revealed to them. *Shalushi* at *1. The court indicated keeping the defendants in the dark about who is suing them "would make the case unmanageable, since the court would have no way of assessing standing, real parties in interest, jurisdiction or damages." *Id.* at *4. The court noted that when the plaintiffs filed for a class certification, they used " 'John Does 1-145'. "Who has been added and who, if anyone, has been deleted remains a mystery." *Id.* In *Malibu Media v. Doe*, 2014 WL 772760 (S.D. Ind. Feb. 24, 2014), the court indicates there is a difference between anonymous parties and unknown parties. Malibu Media at *2. "By the movant's logic, any Tom, Dick, or Harry not affiliated

with this case may file a motion to dismiss without proceeding through the proper channels to become a party." *Id.* Doe's case has none of the risk factors of a phantom Doe case. Resolving her case requires working with defendants to sort out information.

### 3. The Magistrate stated that Doe repeatedly said her Free Speech Rights would be chilled when Doe did not say that.

The R&R the magistrate states,"*While Plaintiff repeatedly asserts the conclusion that her free speech rights will be chilled* if she is required to pursue this action openly, she fails to persuade the Court that pursuit of her claims will compel Plaintiff to reveal information 'of the utmost intimacy.'" *Doe v. Carson,* 2019 WL 1981886 at *1 (W.D. Mich Jan. 4, 2019) & (R. 12, Page ID# 76.) The only place Doe can see that free speech was discussed was in Doe's request, Retaining Anonymity: Motion and Brief, the first section in the brief that was titled, "Signature Mgmt. Team L.L.C. v. John Doe, 876 F.3d 831 (6th Cir. 2017)." (R. 12, Page ID# 80-84.) wherein Doe spent five pages reviewing what Doe believed were synergistic points between Doe's case and Sig Mgmt..

### 4. This district court bases evaluations of intimacy on a set of cases 45-60 years old, identified in one district court in Montana in 1974.

*a. Doe v. Deschamps,* 64 F.R.D. 652 (D. Mont. 1974) identified fourteen cases dealing with anonymity. "[A] host of cases have been prosecuted under fictitious

names. Sometimes the fact of the fictitious name is noted and other times it is not, but it is clear that a practice has developed permitting individuals to sue under fictitious names where the issues involved are matters of a sensitive and highly personal nature. Characteristic of these are the birth control cases, the abortion cases, the welfare cases involving illegitimate children or children whose fathers have abandoned them, and at least one case involving homosexuality. In a case where economic interests were involved a court indicated some doubt about the right to proceed anonymously." *Deschamps*, 64 F.R.D. at 653. The words "characteristics of these" indicate that these are essentially examples of the cases that the court identified at that particular time.

b. The court in *Southern Methodist Univ. Ass'n v. Wynne & Jaffe,* 599 F.2d 707 (5th Cir. 1979) reviewed the ten cases from *Deschamps* where name-redaction was approved and identified what those had in common. "[T]he cases affording plaintiffs anonymity all share several characteristics missing here. The plaintiffs in those actions, at the least, divulged information of the utmost intimacy; many also had to admit that they either had violated state laws or governmental regulations or wished to engage in prohibited conduct...[f]urthermore, all of the plaintiffs previously allowed in other cases to proceed anonymously were challenging the constitutional, statutory, or regulatory validity of government activity." *SMU*, 599

F.2d at 713. The decision in this case was that female members of an association suing law firms for discrimination in summer hiring were not entitled to anonymity, first because basic fairness is that if defendant firms were required to defend serious violations of federal law in their names, then plaintiffs should bring the case in their own names. *SMU* at 713. Additionally, after comparing the facts in this case to the common elements identified in cases where anonymity had been granted in the *Deschamps* cases, they found none of those. *Id.* The Plaintiffs were concerned that they would suffer economically and socially if their names were used and they would find it difficult to practice law if their participation in a discrimination suit were known. *Id.* at 711. The court determined they were under no greater threat of retaliation than other women who sue law firms in their own names. *Id.* at 713. The court additionally stated having been unable to find another Title IX case where anonymity was granted. *Southern Meth. Univ. Ass'n v. Wynne & Jaffe,* 599 F.2d 707, 712 (5th Cir. 1979).

    *c.* *Doe v. Stegall,* 653 F.2d 180 (5th Cir. 1981) was a case where a mother and her two children were suing to stop Bible reading in public school. *Stegall* at 181. The court references the cases compiled in *Southern Methodist University Ass'n,* 599 F.2d at 712-13 nn. 8, 9, 10, 11, 12. and reiterates the three factors determined by *SMU* as common components: "(1) plaintiffs seeking anonymity were suing to

challenge governmental activity; (2) prosecution of the suit compelled plaintiffs to disclose information 'of the utmost intimacy,' and (3) plaintiffs were compelled to admit their intention to engage in illegal conduct, thereby risking criminal prosecution." *Stegall*, 653 F.2d at 185. Just prior to stating the factors, the court says, "only the first of which is present in the suit at bar." *Stegall* at 185. And after the list is given, a statement is made, "The Does clearly challenge governmental activity. But of course, in only a very few cases challenging government activity can be justified." *Stegall* at 186. The court here is saying that the case he is deciding has a government defendant as the only factor of those identified in *SMU, Stegall* at 185, and the implication is that he doesn't want cases following his to think just having the government as a defendant by itself is generally a sufficient reason to redact the name of a party. Then he says that religion is "the quintessentially private matter," *Stegall* at 186, but apparently did not think it was "of the utmost intimacy" having indicated having the government as defendant as the only SMU factor in the case. *Id.* at 185. On the list of three factors, he put only that expression in quotation marks. He makes the point that the three *SMU* factors are not a rigid three step test for determining anonymity. *Stegall* at 185-86. This supports the fact that he is granting anonymity when his case does not strictly encompass the three *SMU* factors. This court expanded from the subject being a

matter considered "intimate" to include matters which are traditionally "private." Religion in the cases that had been collected in Deschamps. In the aspect of having committed or intending to commit criminal activity, that did not apply, but in light of harassment based on their suit it is like an opprobrium analogous to criminal behavior and that protection from threats of violence is appropriate, particularly in light of child plaintiffs. *Id.* at 186.

d. *Porter* gave a set of criteria, the three points identified in *SMU* and 'children' denominated as a fourth factor, as a starting point in evaluating cases for anonymity. Porter based their procedure on *Stegall* which used the same methodology. Why would the district court reach back to the cases cited in *Deschamps* to identify where a subject is found to be intimate?

e. In *G.E.G.*, "Courts have permitted plaintiffs to proceed anonymously 'where the issues involved are of a sensitive and highly personal nature, such as birth control, abortion, homosexuality, or the welfare rights of illegitimate children or abandoned families'..." *G.E.G.* at *2 citing to *SMU*. *SMU* was identifying intimate situations from which their isolation of characteristics had been based and citing to *Doe v. Deschamps*, D. Montana, 1974, 64 F.R.D. 652, 653. *SMU* identified in the footnotes the names of the cases they used which had been identified by the court in *Deschamps*. Privacy about people knowing you use birth control is when doing

so was illegal. *Poe v. Ullman*, 367 U.S. 497, 81, S.Ct. 1752, 6 L.Ed.2d 989 (1961).

Approximately 65% of women use birth control. Kimberly Daniels, Ph.D., and

Joyce C. Abma Ph.D., *Current Contraceptive Status Among Women Aged 15-49:*

*United States, 2015-2017, NCHS Data Brief*, No. 327, U.S. Dept. of Health &

Human Servs., December 2018;  There were several cases in *Deschamps*

challenging the right of state welfare departments to require cooperation of AFDC

recipients in obtaining convictions of spouses for nonsupport, & challenging state

welfare regulations providing for termination of welfare payments to illegitimate

children if the mother refuses to disclose the name of the child's father.   In 2018,

approximately 40% of births in this country are to unmarried individuals. *National*

*Vital Statistics Reports*, Vol. 68, No. 13, Nov. 27, 2019.  Doe does not consider it

appropriate to judge whether something is intimate in 2019 based on fact situations

essentially obsolete after 60 years.  Homosexuality and abortion remain private

issues.  Perhaps birth control, but Doe found no cases on birth control that were not

decades old.  The  R.&R. in Doe's case, "whether prosecution of the action will

compel Plaintiff to disclose information 'of the utmost intimacy,' concerns 'matters

of a sensitive and highly personal nature, such as birth control, abortion,

homosexuality or the welfare rights of illegitimate children or abandoned families.'

*G.E.G. v. Shinseki*, 2012 WL 381589 at \*2 (W.D. Mich. Feb. 6, 2012)." (R. 20, Page ID# 105.)

A problem with saying today that intimate matters 'are' things which made sense 50 years ago, but have no application now takes away from the credibility of the court. It makes no sense for this court to reach back to *Deschamps*. *Stegall* didn't use these fact scenarios as a list to determine what was intimate. *Porter* didn't use these to establish the meaning of intimate. Neither of them hesitated to find a privacy interest that was not in the *Deschamps* cases. If the point is to *give examples* of cases where anonymity has been granted due to intimate factors, *it would make sense to include religion* since that was the intimate matter in both *Stegall* and *Porter*. The determination of intimate factors to be protected should be based on law used in this Circuit, other recent cases, and with consideration of the realities of situations encountered in the present--not be rigidly attached to cases over half a century old identified by one court in Montana in 1974.

## I. Doe should be granted permission to amend her complaint without providing a copy in advance because it is very arduous and expensive for Doe and going through the effort only to have it rejected would be very difficult.

The standard of review to amend a complaint is abuse of discretion. *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000). No prejudice is involved in Doe's case in submitting an amended complaint since neither defendant

has been required to answer yet. Doe is mentally impaired and of limited means. Doe needs to be able to amend her complaint with the knowledge it will be accepted by the court because she will find it difficult to spend the enormous amount of time and money it would require to be dependent on pre-approval. Just the mental hurdle that doing it would require is extremely burdensome.

In an "Order," (R. 19, Page ID# 103.) the magistrate disapproved providing an attorney and amending the complaint. She states Plaintiff "has failed to submit a proposed amended complaint" and "Plaintiff must submit with any motion to amend a *complete* proposed amended complaint." *Id*. The magistrate does not give a citation to identify how Doe was supposed to know about attaching a copy? Doe only recently found out where it was. It is in a section of the local rules under "Electronic Filing." Doe had not read that section because she does not file electronically. Only after having noticed that the court in *Doe v. Sessions* referred that plaintiff to their local rules to amend his complaint, Doe looked again and this time noticed it in the electronic filing section. Doe saw the Plaintiff in *Doe v. Pittsburgh*, 2017 WL 6508183 *2 (W.D. Mich. Sept. 6, 2017) ran into the same issue. the judge indicates Plaintiff has objected to the denial of permission to amend her complaint without a copy, with one reason being the lack of such a requirement in the rules, because it was only applicable when filing electronically.

The judge cites to two cases as authority. The magistrate should have identified those, because pro se litigants should not be left guessing as to where to find requirements about something that is required to be filed. As far as putting "complete" in italics, it is likely a criticism because Doe submitted an "Amendment to her Complaint" and *explained* it would be very burdensome financially to reprint the original complaint again with it. The court was getting I think three copies of everything filed, plus copies for both attorneys and then for Doe--that's six copies total. At that time, she paid for printing and copying. Doe gets free printing now at the library, but cannot abuse that privilege. She is printing only one copy of this and paying for photocopies of the rest.

In Doe's brief within her request to amend her complaint again, she indicated the initial complaint only addressed federal disability law because that's all she could manage to address at that time. (R. 7, Page ID# 47.) Constitutional issues were addressed in the Amendment to the Complaint. *Id.* The further amendment now requested is to tie in any other federal issues. (R. 11, Page ID# 70-71.). Doe was and is too overwhelmed to look at state law. *Id.* As far as other federal issues, she doesn't even know the extent to which those exist because she hasn't been able to allocate the time to research it. In a third effort, Doe can tie the Complaint and two amendments together in one document. For Doe to embark on such an

overwhelming and time-consuming project as integrating and restructuring her complaint seems like too high a mountain to climb without knowing it will be accepted. It puzzles Doe that people know she is disabled, but expect her to function as if she is not. And without assurance it will be accepted by the court, it would be an enormous expense for nothing.

## XI.    CONCLUSION

Doe requests the case be remanded to the district court with no magistrate and a different judge. A motion with an affidavit delineating the reasons for a change of judge per 28 U.S.C. §144 will be forwarded to the Court within the next week. Doe requests that her name continue as redacted and that her case is expedited:

Per 42 U.S.C. §2000e-5(f)(4) "It shall be the duty of the chief judge of the district (or in his absence, the acting chief judge) in which the case is pending immediately to designate a judge in such district to hear and determine the case. In the event that no judge in the district is available to hear and determine the case, the chief judge of the district, or the acting chief judge, as the case may be, shall certify this fact to the chief judge of the circuit (or in his absence, the acting chief judge) who shall then designate a district or circuit judge of the circuit to hear and determine the case."

Per 42 U.S.C. §2000e-5(f)(5), "It shall be the duty of the judge designated pursuant to this subsection to assign the case for hearing at the earliest practicable date and to cause the case to be in every way expedited. If such judge has not scheduled the case for trial within one hundred and twenty days after issue has been joined, that judge may appoint a master pursuant to rule 53 of the Federal Rules of Civil Procedure."

Doe requests that defendants be charged for costs of this litigation with interest including all matters in the district and Appeals Court. Doe requests a jury trial to better protect her interests.

**Certificate of compliance**

Doe's brief is 12,991 words using the correct size font and style of lettering.

**Certificate of Service**

Doe is sending this brief today, February 20, 2020 to the court via fedex and to:

Attorney for MSHDA, Erik Graney

& Attorney for HUD & US, Jeanne Frances Long

via regular mail also today.

Respectfully submitted,

Jane Doe
P.O. Box 230721
Grand Rapids, MI 49523
239.537.5966

# ADDENDUM
## DESIGNATION OF RELEVANT LOWER COURT DOCUMENTS

R.#                                                              PAGEID#

1       Complaint                                                   2-19

2       Application to Proceed in District Court Informa Pauperis   39

7       Amendment to the Complaint                                   47

11      Motion to File 2nd Amendment to Complaint and Be Provided
with an Attorney                                                    67

11-1    Attachment of redacted letter referencing Doe's diagnosis incl
with Request to Further Amend Complaint and Appoint an Attorney
                                                                  70-75

12      Retaining Anonymity: Motion & Brief by Doe                76-84

18      Defendant Poleski's Response to PL Motion for Anonymity, and to
file a 2nd amendment to her complaint                              101

19      Order by Magistrate denying to amend complaint or appoint
counsel                                                            103

20      Report and Recommendation denying anonymity             105-107

26      Objection to Magistrate's R&R re Anonymity                 119

27      Opinion and Order denying anonymity                     122-124

28      Notice of Interlocutory Appeal of denial of anonymity   125-127

31      Order Denying Leave to Proceed In Forma Pauperis           167

32      Order of Dismissal of Case                                 169



Handle with Care / Fragile

MOISTURE RESISTANT

Recycle if Clean & Dry

Store Drop-off

PLASTIC POUCH

FedEx

TRK# 3905 4051 9966

45202

9622 0019 0 (000 000 0000) 0 00 3905 4051 9966

X-RAY
U.S. MARSHAL

FROM: RMN LATITUDE
6235 LYON ST NE UNIT 1
Grand Rapids MI 49503

TO: U.S. COURT OF APPEALS
FOR THE 6th CIRCUIT
100 E 5TH ST
Room 450, Potter Steward US Court
CINCINNATI OH 45202

223-4526

45202-3905-39





XPAK

THE ULTIMATE MAILER
LE SUMMUM DES POCHETTES MATELASSÉES

(DIMENSIONS UTILES:)
x 38,10 cm)

olyair.com
In The USA / fabriqué aux États-Unis

ONLY
Remove From Pouch
PAPER LABEL
how2recycle.info



CANADA ONLY
Remove From Pouch
Séparez l'étiquette de la pochette
PLASTIC PLASTIQUE | PAPER PAPIER
POUCH POCHETTE | LABEL ÉTIQUETTE
how2recycle.info